TurNEY, J.,
delivered the opinion of the Court.
The first reason assigned for a new trial, is, that a complete transcript of the record and proceedings of the Circuit Court of Fentress county, in which the indictment was preferred and found, and in which the crime of murder is alleged to have been committed, had not, at the time of trial, been transmitted to the Circuit Court of Overton county, to which the venue had been changed.
This objection is not well taken. The order of the court making the change of venue at the instance of the accused, together with the indictment, had been transmitted. The order of the Court in Fentress county authorized the Circuit Court of Overton county to proceed with the trial. On the presentation of the *417 case the only duty of the Court was to see that the Court first having jurisdiction of the cause had made the order changing the venue.[1]
Then, the indictment being presented and no objection made by the accused or his counsel, the Court was authorized and obliged to proceed with the trial.
The statute enacting, “Upon making an order for the change of venue, the Clerk shall make out a full and complete transcript of the record in said cause, and transmit the same, together with the indictment and all other papers on file, to the Clerk of the court to which the venue is changed, which transcript shall be entered on the minutes of the Court,” is, as to the transmission, merely directory to the Clerk, and is in no way necessary to the jurisdiction of the court to- which the venue has been changed. So soon as the order has been made, and before any paper or proceeding has been transmitted, the jurisdiction of the second court attaches, and that of the court making it, is lost upon its adjournment.
It is not the filing, but the making of the order that confers the jurisdiction. The indictment is the cause, and when the two come to the knowledge of and custody of the court, as was the fact here, everything necessary to a trial has been done.
Under a contrary rule, a case which had been pending in a court for a great many terms, would seldom be tried properly in another court on change of venue, as “a full and complete transcript of the proceedings” would embrace every order of every kind and for every *418 purpose, including adjournments, recesses, respites, swearing of constables in charge of jury, &c. So that, after everything that could reasonably have been found was transmitted, it would probably come to pass that some order of, in fact, no moment, had escaped the clerk, and therefore a new trial must be had.
Such a rule would impose upon the court an impossibility — that is, to know that every minute, important and unimportant, as well as every subpoena, affidavit, &c., entered of record or issued from or filed in the court whence the cause came, was before it. The purpose of the law is to insure speedy and impartial trials, and not to put it in the power of parties accused of crime to complicate and interminably delay' investigation.
The testimony of J. JET. Story, giving the condition and appearance of other dead bodies in the house, was competent. It was the duty of the State to show, and the right of the jury and the public to know, a full description of the premises in which the body of Catharine Galloway was found, including persons and things present, for the purpose of showing, or aiding to show, the manner and instrument of her death. The fact that persons who • had been with her were dead, tended to destroy the hypothesis of their guilt, as inconsistent with the guilt of the accused. For such purpose the testimony was clearly admissible, and the court having so, in substance,' instructed the jury, and that it could not look to it as evidence of a substantive offense; and having also, in proper terms, cautioned it against its illegitimate influences, it is not for *419 us to attend to tbe argument that it may bave aroused the jury to indignation, induced them to give undue weight to facts proven, and induced them to inflict a greater measure of punishment. We must content ourselves with the proper ruling and charging of the law.
James Galloway, a witness, about eight years of age, was objected to because of his tender years and for want of proper instruction. The court asked the witness if he knew what would become of him if he swore a lie? He said, “Yes; the bad man will get me.” He was then asked who told him so. He said his mother. "While, as a general rule, it might have been proper to have further tested the witness, yet, in view of his remarkably intelligent testimony, we are satisfied the manner of the child was of a character to satisfy the court of his capacity and instruction, and justified the brevity of 'examination by the court. The sensible answers make it clear that the witness understood sufficiently the nature of an oath and had a well defined idea of future rewards and punishments. His candor in speaking of his testimony, given on former trials, discovers an honesty the absence of which in many older and more mature persons, is to be regretted.
It is next objected that the court erred in not committing to writing that part of his charge embracing the Code 4597 to 4605, inclusive. The record shows the court read these sections to the jury, referring to them by number and book. This was sufficiently definite, and there can be no mistaking what was read and for what purpose it was read. It is not a refer *420 ence in general terms to any statute, but in specific and concise words. These sections describe the different degrees of homicide. Besides, his Honor gave additional instructions defining the meaning of the terms descriptive of the offenses.
The reading of the statute with the additional explanation, was a declaration of the whole law applicable to the case.
The charge is eminent for fullness and clearness.
The confessions were made freely and voluntarily, without the least inducement of hope or fear.
There is no error in the conviction for murder in the first degree, or the judgment of death.
The facts point distinctly and unerringly to the plaintiff in error.
Affirm the judgment.

 See acc. Adams v. State, 1 Swan, 466.